UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

WEIJUN LIANG,

      Petitioner,

      v.                          CAUSE NO. 3:25cv1052 DRL-SJF

BRIAN ENGLISH *et al.*,

      Respondents.

<u>OPINION AND ORDER</u>

Immigration detainee Weijun Liang, by counsel, filed a petition for a writ of habeas corpus under 28 U.S.C. § 2241, arguing that he is being unlawfully detained in the custody of United States Immigration and Customs Enforcement (ICE). The respondents answered the petition, and Mr. Liang replied. The respondents filed a supplemental brief, providing additional information at the court's request. The court now grants the petition.

As a preliminary matter, Mr. Liang was ordered to show cause why every respondent but the Miami Correctional Facility Warden, the only respondent who exercises "day-to-day control" over him, should not be dismissed under *Kholyavskiy v. Achim*, 443 F.3d 946 (7th Cir. 2006). Relying on *Rumsfeld v. Padilla*, 542 U.S. 426 (2004), the court of appeals there concluded the proper respondent in an immigration habeas case challenging the constitutionality of a petitioner's confinement is the warden of the facility where the petitioner is being held, not a supervisory official who has the authority to free the petitioner. *See also Doe v. Garland*, 109 F.4th 1188, 1192 (9th Cir. 2024); *Anariba v. Dir. Hudson Cnty. Corr. Ctr.*, 17 F.4th 434, 444 (3rd Cir. 2021); *Vasquez v. Reno*, 233 F.3d 688, 696 (1st Cir.

2000). Mr. Liang does not oppose the dismissal of the non-custodial respondents. For the sake of clarity, the court refers to the responding party as the Warden from this point on.

Mr. Liang was born in China in 1971. He arrived in the United States in 1980 with his parents and siblings. In 1989, he was convicted of rape and incarcerated. While he was still incarcerated, an immigration judge entered an order of removal on August 24, 1994. The order became administratively final the same day. After Mr. Liang completed his criminal sentence, ICE detained him for about a year, until he was released on an order of supervision in May 2017 because ICE could not obtain a travel document for him to return to China. The Warden does not contest that Mr. Liang fully complied with the conditions of his supervision order—about eight years thereafter. There is no report of other crime.

On April 17, 2025, Mr. Liang was arrested at a routine ICE check-in. He was told that the administration's policy changed, and relations between the United States and China were improving. Mr. Liang signed an authorization to allow ICE to contact his embassy. Mr. Liang did not receive a written statement as to the reasons for his re-detention.

Mr. Liang says he did not receive a 90-day custody review. *See* 8 C.F.R. § 241.4(*l*)(3). But the Warden provided a copy of the 90-day custody review, which determined Mr. Liang would remain in custody because ICE expected to receive the necessary travel documents to effectuate his removal in the reasonably foreseeable future and he had not demonstrated that he would not pose a danger if released [19-1]. This decision to continue detention is dated July 27, 2025, but strangely it says it was served on Mr. Liang on July 25, 2025—two days before the decision was signed [*id.*]. Mr. Liang reports that ICE conducted a 180-day custody review, but he has not been told the outcome of that review.

Mr. Liang filed this habeas petition in December 2025, about eight months after he was re-detained, arguing that his confinement was unreasonable because his removal is not reasonably foreseeable. He argues as much because there is no evidence China has changed its position from 2017 regarding his repatriation.

In answering the petition, the Warden (through federal counsel) provides a declaration from a deportation officer, who attests that, on August 4, 2025, ICE Enforcement and Removal Operations (ERO) requested travel documents from China for Mr. Liang, and that the request remained pending as of January 6, 2026 [6-1]. The officer states that ICE continues to work with the Headquarters Removal Management Division to attempt to obtain travel documents to remove Mr. Liang to China.

In reply, Mr. Liang argues that the nearly four-month delay in ICE submitting a travel document request to China after he was first detained in April 2025 demonstrates that removal was (and is) not reasonably foreseeable. Further, the lack of a response from China in the five months since the request was made is further evidence that removal is not reasonably foreseeable. Mr. Liang argues that China's prior refusal to cooperate in 2017, combined with a several months-long silence *vis-à-vis* the current travel document request, shows removal is not foreseeable.

The Warden first argues that the court lacks subject matter jurisdiction to hear this petition, under both 8 U.S.C. § 1252(b)(9) and § 1252(g). Section 1252(g) states that, except as provided in this section, no court shall have jurisdiction to hear any case, including in habeas, "on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien

3

under this chapter." 8 U.S.C. § 1252(g). The Warden argues Mr. Liang's detention falls under the decision to execute his removal order, so the court must dismiss the petition.

Section 1252(g) does not reach as broadly as the respondent claims. Section 1252(g) "applies only to three discrete actions that the Attorney General may take: her decision or action to *commence* proceedings, *adjudicate* cases, or *execute* removal orders." *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999) (quotations omitted). Nearly three decades after this decision, it remains "implausible" that mentioning these three discrete events "was a shorthand way of referring to all claims arising from deportation proceedings." *Id.*; *see also Jennings v. Rodriguez*, 583 U.S. 281, 294 (2018) (plurality) ("We did not interpret this language [in § 1252(g)] to sweep in any claim that can technically be said to 'arise from' the three listed actions of the Attorney General. Instead, we read the language to refer to just those three specific actions themselves."). Instead, "§ 1252(g) is applicable only where the alien's well-pleaded complaint is based on one of § 1252(g)'s three listed factors." *Fornalik v. Perryman*, 223 F.3d 523, 531 (7th Cir. 2000). Mr. Liang's petition does not challenge ICE's power to remove him to China; the issue is whether he will be detained while these efforts proceed. The court thus retains jurisdiction to decide this petition.

The Warden additionally argues 8 U.S.C. § 1252(b)(9) is a jurisdictional bar to this habeas corpus petition. Under this statute, "[j]udicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter shall be available only in judicial review of a final order under this section." 8 U.S.C. § 1252(b)(9). This acts as a "zipper clause," funneling a noncitizen's claims

4

about his removal to one court at the end of the removal proceedings. *See Am.-Arab Anti-Discrimination Comm.*, 525 U.S. at 483. The Warden contends that re-detaining a noncitizen for purposes of removal constitutes "an enforcement mechanism of a removal order" such that review is available only in judicial review of a final order, which § 1252(a)(5) dictates must be brought directly in the court of appeals.

The Warden's interpretation of § 1252(b)(9) would render Mr. Liang's detention effectively unreviewable because he does not seek to challenge a final order of removal. *See Jennings*, 583 U.S. at 292-93 (plurality) (concluding § 1252(b)(9) did not bar habeas petition challenging no-bond detention during removal proceedings because the legal question regarding no-bond detention did not "arise from" the actions taken to remove the noncitizen); *see also Nasrallah v. Barr*, 590 U.S. 573, 582 (2020) ("final orders of removal encompass only the rulings made by the immigration judge or Board of Immigration Appeals that affect the validity of the final order of removal"); *Torres-Tristan v. Holder*, 656 F.3d 653, 658 (7th Cir. 2011) (concluding a "final order of removal" includes the actual order of removal and "all orders closely related to the deportation proceeding and entered during the proceeding" but not "ancillary determinations made outside the context of a removal proceeding" that are not "intimately associated and immediately associated with the final order or governed by the regulations applicable to the deportation proceeding itself, and ordinarily presented to the . . . immigration judge who entered the deportation order") (cleaned up). The question about the lawfulness of Mr. Liang's re-detention is distinct and does not arise from "any action taken" to remove him from the United States. Thus, the court has jurisdiction to address this petition.

Turning to the merits, 8 U.S.C. § 1231(a)(6) gives the government the authority to detain a noncitizen while it effectuates a removal order. All noncitizens must be detained for a 90-day "removal period," which for Mr. Liang began when he was released from prison in 2016 and turned over to immigration authorities. *See* 8 U.S.C. §§ 1231(a)(1)(A), (a)(2)(A). Beyond this 90-day period, certain classes of noncitizens may be detained even longer—what the statute calls inadmissible aliens (under 8 U.S.C. § 1182), those who have violated their nonimmigrant status conditions (under 8 U.S.C. § 1227(a)(1)(C)), those who have committed certain crimes, such as aggravated felonies, drug trafficking, or illegal firearm offenses (under 8 U.S.C. § 1227(a)(2)), those removable for national security or foreign relations reasons (under 8 U.S.C. § 1227(a)(4)), and those whom the Attorney General determines to be a risk to the community or unlikely to comply with the order of removal. These noncitizens "may be detained beyond the removal period" or released on conditions of supervision. 8 U.S.C. § 1231(a)(6).[1] Given his criminal conviction, Mr. Liang's detention years ago was authorized by § 1231(a)(6). The Warden likewise relies on this same statute as the basis for his current detention.

"The distinction between an alien who has effected an entry into the United States and one who has never entered runs throughout immigration law," and "once an alien enters the country, the legal circumstance changes, for the Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). To avoid a

---

[1] For noncitizens who don't fall in these categories, if they are not removed during the 90-day removal period, they must be released, subject to conditions of supervision. 8 U.S.C. § 1231(a)(3).

constitutional due process problem with § 1231(a)(6), and specific to a noncitizen who is present within this country and who is ordered removed, the law requires that his detention be limited to a reasonable time — namely "a period reasonably necessary to bring about that alien's removal from the United States." *Id.* at 689; *see also id.* at 682, 690-91.

Any § 1231(a)(6) detention of a present-but-ordered-removed noncitizen has this limitation, as it guards against the possibility that he might be indefinitely detained should his removal not be reasonably achievable. His indefinite detention would raise a serious constitutional problem. *Id.* at 690; *see also Clark v. Suarez Martinez*, 543 U.S. 371, 378 (2005) (same). In short, "once removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." *Zadvydas*, 533 U.S. at 699.

The historic writ of habeas corpus grants a federal court the authority to review a noncitizen's detention and to decide independently whether "a set of particular circumstances amounts to detention within, or beyond, a period reasonably necessary to secure removal." *Id.*; *see also* 28 U.S.C. § 2241(c)(3). "In answering that basic question, the habeas court must ask whether detention exceeds a period reasonably necessary to secure removal" and "should measure reasonableness primarily in terms of the statute's basic purpose, namely assuring the alien's presence at the moment of removal." *Zadvydas*, 533 U.S. at 699. When removal proves reasonably foreseeable, the court can consider other factors (such as risk of crime) and often will deny habeas relief; whereas, when removal seems attenuated or unlikely, the court will order the individual's release, albeit conditioned on appropriate terms of supervision and the noncitizen's compliance with these terms. *See id.* at 699-700. After all, the choice isn't between detention and a noncitizen "living at large,"

but between detention and a noncitizen's supervised release on conditions that he cannot violate. *Id.* at 696.

The law materially defers these difficult judgments to the Executive Branch for a six-month period during which detention is considered presumptively reasonable to execute a removal order. *Id.* at 700-01. Even thereafter, the court listens with care when the government's "foreign policy judgments"—such as the status of repatriation negotiations—are implicated and otherwise affords "appropriate leeway when its judgments rest upon foreign policy expertise." *Id.* at 700. A noncitizen "may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.* at 701. But "once [he] provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the government must respond with evidence sufficient to rebut that showing." *Id.* (cleaned up); *see also Suarez Martinez*, 543 U.S. at 385-86.

The petitioner bears the initial burden, and the court sees no reason today to alter this. *See* 28 U.S.C. § 2241; *Zadvydas*, 533 U.S. at 700; *see also Skaftouros v. United States*, 667 F.3d 144, 158 (2d Cir. 2011); *Espinoza v. Sabol*, 558 F.3d 83, 89 (1st Cir. 2009). Nor must the court engage the same constitutional dilemma that § 1231(a)(6) could present merely because this is a second period of detention and not his first. *See Zadvydas*, 533 U.S. at 690. The court may consider not just what led to his original detention and release years ago, to the extent still pertinent, but also what circumstances newly exist today. Despite the old adage, past isn't always prologue in this context, and just because removal couldn't occur before doesn't mean it can't reasonably occur today under renewed efforts. At the same

time, nothing in § 1231(a)(6) and nothing in *Zadvydas* suggests that the mere passage of time erases everything about the initial showing to make it all irrelevant. *See also Vu v. English*, No. 3:25cv999, 2026 WL 194171, 11-14 (N.D. Ind. Jan. 26, 2026) (Leichty, J.); *cf. Kem v. Noem*, No. 3:25cv997, 2026 WL 100566, 10-11 (N.D. Ind. Jan. 14, 2026) (Leichty, J.).[2] After all, as the period of confinement grows, what qualifies as a reasonably foreseeable future conversely must shrink. *Id.* at 701.

Mr. Liang was detained for about a year in 2016 until he was released on a supervision order in May 2017. Back then, ICE could not obtain a travel document for him to return to China. That period of detention, and its conclusion, complied with the standards from *Zadvydas*, and no one has challenged this. From May 2017 until April 2025, when he was detained again, neither side reports any progress toward his removal.

Even after his detention in April 2025, the government never requested travel documents until August 2025. As of January 2026, ICE reported that it "continues to work with Headquarters Removal Management Division to attempt to obtain travel documents to remove [Mr. Liang] to China" [6-1]. There may be a hope in this, but the court cannot find this to mean, given this record, that there is a reasonable likelihood of removal in the foreseeable future. Even two months later, there has been no update to suggest that this hope of receiving travel documents has any real traction, why it has taken so long already without an answer, what specific efforts have been devoted to pursue this particular request, or what other steps have been (or will be) taken to make removal a reasonably foreseeable

---

[2] No one should read either *Vu* or *Kem* as indicating that an original showing always remains gospel or shifting the burden.

prospect, much less that there are, tied up in any of this, foreign policy judgments that merit unique deference. Mr. Liang already has been in custody beyond any presumptively reasonable period.

In other recent cases, ICE (or DHS) has reported that travel documents for removal to China typically has taken no more than two months. *See, e.g., Zheng v. Albarran*, 2025 U.S. Dist. LEXIS 259991, 7 (E.D. Cal. Dec. 16, 2025) (declaring that the "Chinese government has been fulfilling travel document requests within forty-five to sixty days, but sometimes in a shorter period of time"); *Huang v. Albarran*, 2025 U.S. Dist. LEXIS 209204, 4 (E.D. Cal. Oct. 22, 2025) (same); *but see Zeng v. Noem*, 2026 U.S. Dist. LEXIS 45736, 4 (W.D. Mich. Mar. 5, 2026) (declaration that "it can take months to get a travel document issued"). The court cannot say after a much longer time, nearly a year, that removal is likely in the foreseeable future here.

The only reasonable finding on this record is that immigration enforcement could not remove Mr. Liang to China in 2017, and that removal efforts reinitiated in August 2025 are bearing no fruit, or even seeds that might foreseeably grow into fruit. Mr. Liang has met his burden. The Warden has not rebutted this showing. Accordingly, consistent with *Zadvydas*, 533 U.S. at 699-700, and because removal is not reasonably foreseeable, the court finds "continued detention unreasonable and no longer authorized by statute," albeit with his release occurring under supervision.

The Warden argues that the Mr. Liang's detention is nonetheless justified because the government has "extraordinarily broad discretion" to revoke an order of supervised release under 8 C.F.R. § 241.4(*l*). This regulation may address reasons for detention, but not

necessarily the duration of that detention. And a regulation cannot give an agency more power than is granted to it by statute and must also comport with the Constitution.[3] *See Food & Drug Admin. v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 125 (2000) ("Regardless of how serious the problem an administrative agency seeks to address, however, it may not exercise its authority in a manner that is inconsistent with the administrative structure that Congress enacted into law.") (quotations omitted). Mr. Liang's seemingly indefinite detention, sans habeas corpus relief, is not authorized by § 1231(a)(6). *See Zadvydas*, 533 U.S. at 699-700. Efforts to remove him may continue while he returns to supervision, on the same conditions as his last release.

For these reasons, the court:

(1) DISMISSES Attorney General Pamela Bondi; Former Secretary of Homeland Security Kristi Noem; Acting Director of United States Immigration and Customs Enforcement Todd Lyons; and Acting Executive Associate Director of Enforcement and Removal Operations at Immigrations and Customs Enforcement Marcos Charles;

(2) GRANTS the petition (ECF 1) to the extent that the court ORDERS the respondent to release Weijun Liang on the same conditions of supervision that existed before his re-detention and to certify compliance with this order by filing a notice with the court by **March 27, 2026**, and

---

[3] The court notes that 8 C.F.R. § 241.4(*l*) governs the revocation of release both for post-removal-order noncitizens under 8 U.S.C. § 1231(a)(6) and noncitizens who are still in removal proceedings and paroled into the United States under 8 U.S.C. § 1182(d)(5)(A). *See* 8 C.F.R. 241.1(a). These two categories of noncitizens have different considerations regarding any liberty interests. This opinion covers only noncitizens falling under § 1231(a)(6).

(3) DIRECTS the clerk to email a copy of this order to the Warden of the Miami Correctional Facility at the Indiana Department of Correction to secure Weijun Liang's release.

(4) Any fee petition should be filed within the deadlines set by the Equal Access to Justice Act, 28 U.S.C. § 2412.

SO ORDERED.

March 26, 2026                          *s/ Damon R. Leichty*
                                        Judge, United States District Court